1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA.

ZHIVKA VALIAVICHARSKA,

        Plaintiff,

    v.

MITCH CELAYA, et al.,

        Defendants.

Case No.: CV 10-4847 JSC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 44)**

       This section 1983 lawsuit arises out of a student protest at UC Berkeley. Plaintiff Zhivka Valiavicharska alleges that her pinky finger was severely and permanently injured when a campus police officer hit her finger with a baton. Defendants move for summary judgment on all claims on the grounds that Plaintiff's evidence is insufficient to support a finding of a constitutional violation or, in the alternative, the evidence establishes that each Defendant is entitled to qualified immunity as a matter of law. After carefully considering the evidence properly submitted by the parties, and having had the benefit of oral argument on November 17, 2011 and subsequent supplemental briefing, the Court concludes that there is a material dispute of fact with respect to Plaintiff's excessive force claims against Officer Tinney, but in all other respects Plaintiff's evidence is insufficient to defeat summary judgment.

United States District Court
Northern District of California

## SUMMARY JUDGMENT EVIDENCE

Defendant Brendan Tinney ("Officer Tinney") has worked as a police officer with the University of California Police Department ("UCPD") at the Berkeley campus since 2005. On November 20, 2009, Officer Tinney was called into work early due to "an evolving incident." (Dkt. No. 44-2 at 11.) During the night a group of protesters used "chains, u-locks, and stacked furniture" to barricade themselves inside the second floor of Wheeler Hall, where they hung banners out the windows that denounced "fee increases and layoffs." (Dkt. No. 44-5 ¶11.) Those persons occupying Wheeler Hall were informed they were subject to arrest, and police tape was erected around Wheeler Hall "to establish a crime scene perimeter." (Id. ¶¶12-13.) Upon arrival at work, Officer Tinney was instructed to assist with crowd control west of Wheeler Hall. (Dkt. No. 44-2 at 5-7.) He was later redeployed to the southwest corner of Wheeler Hall. (Dkt. No. 44-2 at 12.)

As more protesters arrived at Wheeler Hall, police officers replaced the crime scene tape with metal barricades linked together to form a perimeter around the building.  Some protesters resisted the barricade placement, and in two instances, police officers sustained injury. (Dkt. No. 44-5 ¶¶29-30.) Once the barricades were in place, some "protestors continually cut the plastic ties joining the barricade sections in an effort to knock down the barricades and to breach the perimeter." (Id. ¶30.) In the late morning, Sergeant Jewell instructed Officer Tinney to don his helmet and 26-inch wood baton. (Dkt. No. 44-2 at 16, 20.) At approximately 1 pm, Officer Tinney was stationed at the southwest corner of Wheeler Hall "to prevent protestors from breaching the barricade line" in his vicinity. (Id. at 20.) Sergeant Jewell instructed Officer Tinney to "hold that barricade line and to prevent people from crossing that line." (Id. at 20-21.)

Around the same time, Plaintiff stood directly behind the metal barricade in Officer Tinney's vicinity.  Officer Tinney observed Plaintiff violently rocking the barricade with one hand. (Dkt. No. 44-2 at 25, Dkt. No. 50 ¶5.) Plaintiff was the only person with a hand on the barricade. (Dkt. No. 44-2 at 25-26.) When Officer Tinney observed Plaintiff shake the barricade, he became concerned that it would topple over, and "people would be hurt by a

2

stampede of protestors." (Id. at 26.)  There were several hundred people in the area Officer Tinney was maintaining. (Id. at 26-27.)  Officer Tinney gave Plaintiff a verbal command to "get her hands off the barricade." (Id. at 28.)  When Plaintiff did not "immediately get her hands off the barricade and stop rocking it," Officer Tinney raised his baton and did a "fake pump, as kind of a more demonstrated use of force, to see if that alone, kind of the threatened use of force would get her to stop her behavior." (Id. at 29.)  When his conduct did not stop her behavior, he rushed up to Plaintiff and struck the barricade with his baton only a few inches from her hand. (Dkt. No. 44-2 at 29, Dkt. No. 50 ¶6.)  He verbally ordered Plaintiff to keep her hand off the barricade "in a very aggressive and threatening" manner.  Plaintiff removed her hand.  (Dkt. No. 44-2 at 29; Dkt. No. 50 ¶6.)

Officer Tinney then stepped back from the barricade, approximately five steps, and started looking back and forth, but his focus was on the southwest corner away from Plaintiff where officers were still trying to install barricades over the resistance of some protesters. (Dkt. 44-2 at 30.)  Officer Tinney does not recall Plaintiff saying anything to him at that time. (Id. at 31.)  A few minutes elapsed.

The parties' evidence as to what happened next differs significantly.  According to Officer Tinney, he specifically saw Plaintiff once again violently rocking the barricade in front of him, and he became concerned that the barricade shaking would become "contagious behavior and that seemed very dangerous . . . because the last thing [he] wanted was that barricade line to be tipped over and for all of those protestors to come running at [the police officers]." (Dkt. No. 44-2 at 32-33.)  He saw only Plaintiff's hands on the barricade. (Id. at 33.)  "As soon as" Officer Tinney observed Plaintiff "rocking the barricade again, it was clear in [his] mind that she wasn't responding to verbal warnings and kind of a display of force, so from [his] training and experience, [he] know[s] that [the police] policy allows [officers] to use a baton in that case." (Id. at 34.)  He then used "a one-handed backhand chop with [his] right hand, bringing it over [his] left shoulder" in an approximately 45-degree angle and struck "where her fingers were" on the barricade. (Id.)  Plaintiff "immediately withdrew her hand and disappeared into the crowd." (Id. at 35.)

3

Plaintiff's evidence paints a different picture.  A few minutes after she initially removed her hand from the barricade, Plaintiff "was watching the police attacking some demonstrators nearby." (Dkt. No. 50 ¶7.)[1]  She "needed to hold onto something" for "support" and returned her hand to the barricade.  (Dkt. No. 44-3 at 24.)  She was not "deliberately disobeying the officer," she just "meant to hold on to something." (Id. at 25.)  She was holding the barricade for support—not shaking it—when Officer Tinney ran over and struck her on the hand with his baton. (Dkt. No. 50 ¶¶7-8.)  Upon being struck, Plaintiff immediately removed her hand and withdrew into the crowd.  She went to the nearby campus medical center and sought medical help. (Id. ¶9.)

Plaintiff had four surgeries as a result of her hand injury, although Defendants contend there were only three surgeries and at least one was necessitated by Plaintiff's failure to properly care for her injury. (Dkt. Nos. 44-3 at 35; Dkt No. 54 at 6-8, 11.)  Plaintiff currently receives physical therapy once a week and alleges that she has suffered a loss of "grip strength" due to her inability to flex her pinky finger. (Dkt. Nos. 44-3 at 36, Dkt. No. 50 ¶10.)

## PROCEDURAL HISTORY

Plaintiff's First Amended Complaint includes four section 1983 claims: (1) interference with her First Amendment right to free speech against Officer Tinney; (2) a Fourth Amendment unreasonable force claim against Officer Tinney; (3) a failure to supervise claim against UC Berkeley Chief of Police Mitchell Celaya ("Celaya") and UC Berkeley Captain Margot Bennett ("Bennett"); and (4) a failure to adequately discipline claim against Celaya and Bennett. She also makes a state law claim for battery against Officer Tinney and a state law negligent supervision claim against Celeya and Bennett.

Defendants moved for summary judgment on the entire First Amended Complaint. Plaintiff filed her written response on the due date along with a single exhibit, Plaintiff's declaration. (Dkt. Nos. 49, 50.)  The next day Plaintiff filed a declaration from counsel and

---

[1] Defendant objects to this statement on the grounds that it is opinion, hearsay, and a conclusory allegation. (Dkt. No. 55 at 3.) Defendants' objection is overruled.  In any event, Plaintiff's characterization of what she observed is immaterial to the Court's decision.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  attached two exhibits: excerpts from the depositions of defendants Celaya and Officer Tinney.

2  (Dkt. No. 52.)  Plaintiff did not file as an exhibit a purported videotape of portions of the

3  incident at issue.  As of the November 17 hearing, Plaintiff still had not placed the videotape

4  in the record.

5       Following the hearing, and without leave of Court, Plaintiff unilaterally filed a

6  declaration by counsel stating that after the November 17, 2011 oral argument, counsel

7  personally delivered a copy of the videotape to the Court. (Dkt. No. 63.)  The next day, and

8  again without leave of Court, Plaintiff filed a letter brief addressing qualified immunity—an

9  issue squarely raised in Defendants' motion for summary judgment. (Dkt. No. 64.)  Finally,

10  and once again without seeking leave of Court, she filed a further declaration in support of her

11  opposition to summary judgment. (Dkt. No. 65.)  None of these submissions offered any

12  explanation for Plaintiff's failure to timely submit the evidence and argument.

13       Thereafter the Court struck the videotape and Plaintiff's late declaration from the

14  record as untimely without any excuse, let alone a legitimate one. (Dkt. No. 66.)  The Court

15  did not, however, strike the letter brief since the Court is obligated to apply the correct law

16  regardless of whether it is cited and discussed by a party.  Instead, it gave Defendants an

17  opportunity to respond to Plaintiff's letter brief.

18       Plaintiff subsequently filed a letter with the Court asking the Court to reconsider its

19  decision striking the videotape.  She also sought to continue the Court's ruling on summary

20  judgment to give Plaintiff the opportunity to take two depositions. (Dkt. No. 68.)

21       The Court declines to reconsider its order striking Plaintiff's late submission of the

22  videotape.  Plaintiff still offers no reasonable explanation for her failure to timely submit the

23  videotape; the filing on October 28, 2011 (which itself was one day late) clearly shows only

24  two exhibits being filed—the deposition excerpts.  Further, at the hearing on November 17,

25  2011, Plaintiff did not seek leave to file the videotape.  Finally, Defendants have objected to

26  the videotape on the ground that it has not been authenticated, and no foundation has been

27  laid.  The Court agrees.  Plaintiff simply states that Defendants produced the videotape to

28

1    Plaintiff. Such assertion does not provide a foundation as to who took the videotape, when

2    and how. Accordingly, the request for reconsideration is denied.

3        The Court also declines Plaintiff's belated attempt to continue the summary judgment

4    proceedings to take two depositions. Federal Rule of Civil Procedure 56(d) (formerly 56(f))

5    allows a court to defer summary judgment "[i]f a nonmovant shows by affidavit or declaration

6    that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R.

7    Civ. P. 56(d). Plaintiff failed not only to file such an affidavit prior to the summary judgment

8    hearing, let alone by the time her opposition was due, but also to cite to the rule in her

9    subsequent letter to the Court. This omission is unsurprising since the nonmoving party must

10   also submit an affidavit explaining how the additional discovery is essential to defeating

11   summary judgment to be entitled to a Rule 56(d) continuance. California v. Campbell, 138

12   F.3d 723, 779 (9th Cir. 1998). Plaintiff does not explain what testimony she expects these

13   witnesses would give that would support a denial of summary judgment. Plaintiff's untimely

14   request is therefore denied.

15   **SUMMARY JUDGMENT STANDARD**

16       Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

17   and admissions on file, together with the affidavits, if any, show that there is no genuine issue

18   as to any material fact." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a

19   sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving

20   party, and a dispute is "material" only if it could affect the outcome of the suit under

21   governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

22       Defendants, as the moving parties, have the burden of producing evidence negating an

23   essential element of each claim on which they seek judgment or showing that Plaintiff cannot

24   produce evidence sufficient to satisfy her burden of proof at trial. Nissan Fire & Marine Ins.

25   Co., Ltd. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). Once Defendants meet that

26   burden, Plaintiff, as the non-moving party, must show that a material factual dispute exists.

27   California v. Campbell, 138 F.3d 772, 780 (9th Cir.1998). Allegations alone are not sufficient

28   to meet Plaintiff's burden; instead, Plaintiff must submit admissible evidence. Devereaux v.

*United States District Court*
*Northern District of California*

Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001).  This evidence must be such that a reasonable trier of fact could return a verdict in Plaintiff's favor.  Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

In evaluating the nature of the evidence in the record, summary judgment is rarely appropriate "where credibility is at issue" since "only after an evidentiary hearing or a full trial can these credibility issues be appropriately resolved."  SEC v. M&A West, Inc., 538 F.3d 1043, 1055 (9th Cir. 2008) (quoting SEC v. Koracorp Indus., Inc., 575 F.2d 692, 699 (9th Cir. 1978)).

## DISCUSSION

To prevail on a § 1983 claim, Plaintiff must show that the alleged conduct both occurred "under color of state law" and deprived Plaintiff of a constitutional or federal statutory right.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 887 (9th Cir. 2003). Personal liability is established in a §1983 action if Plaintiff shows that the official, "acting under color of state law, caused the deprivation of a federal right." Hafer v. Melo, 502 U.S. 21, 25 (1991) (internal quotations omitted).

A public official sued in an individual capacity, as are all defendants here, can respond with a personal defense, such as qualified immunity.  Dittman v. California, 191 F.3d 1020, 1027 (9th Cir. 1999).  Under qualified immunity, government officials are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow).

To determine whether qualified immunity applies, the Court decides whether "(1) the officer's conduct violated a constitutional right; and (2) the right which was violated was clearly established at the time of the violation." Espinosa v. City and County of San Francisco, 598 F.3d 528, 532 (9th Cir. 2010) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001); Hopkins v. Bonvicino, 573 F.3d 752, 762 (9th Cir. 2009)).   Courts may address these questions out of sequence, but "'it is often beneficial' to perform the analysis in the sequence outlined above."

United States District Court
Northern District of California

1    Id. (quoting Pearson, 555 U.S. at 236). "A right is clearly established if a reasonable officer

2    would know that his conduct was unlawful in the situation he confronted." Espinosa, 598 F.3d

3    at 532. The officer is entitled to immunity if he did not violate a constitutional right or if he

4    violated a constitutional right that was not clearly established. Id.

5        To resolve "a motion for summary judgment based on qualified immunity, a court must

6    carefully examine the specific factual allegations against each individual defendant (as viewed

7    in the light most favorable to the plaintiff)." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th

8    Cir. 2000). "If a genuine issue of material fact exists that prevents a determination of qualified

9    immunity at summary judgment, the case must proceed to trial." Serrano v. Francis, 345 F.3d

10   1071, 1077 (9th Cir. 2003). "Where the facts are disputed, their resolution and determinations

11   of credibility 'are manifestly the province of a jury.'" Wall v. County of Orange, 364 F.3d

12   1107, 1110-11 (9th Cir. 2004) (quoting Santos v. Gates, 287 F.3d 846, 852 (9th Cir. 2002)).

13      **A.**     **First Cause of Action: First Amendment Violation**

14        Plaintiff's First Amendment claim against Officer Tinney fails as a matter of law. To

15   prevail, Plaintiff "must provide evidence showing that by his actions the defendant deterred or

16   chilled the plaintiff's political speech and such deterrence was a substantial or motivating

17   factor in the defendant's conduct." Mendocino Envt'l Ctr. v. Mendocino County, 192 F.3d

18   1283, 1300 (quoting Sloman v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1994) (internal

19   quotation marks and alterations omitted)). Plaintiff must show that "(1) [s]he engaged in

20   constitutionally protected activity; (2) as a result, [s]he was subjected to adverse action by the

21   defendant that would chill a person of ordinary firmness from continuing to engage in the

22   protected activity; and (3) there was a substantial causal relationship between the

23   constitutionally protected activity and the adverse action." Blair v. Bethel School Dist., 608

24   F.3d 540, 543 (9th Cir. 2010).

25        Plaintiff's opposition does not even address this claim, let alone demonstrate that the

26   evidence in the record is sufficient to support a finding in her favor. For this reason alone

27   summary judgment is warranted. Moreover, the Court's own unaided review of the record

28   establishes that there are no facts to suggest that Officer Tinney hit Plaintiff with the baton

because of her speech; to the contrary, the evidence establishes that Officer Tinney hit Plaintiff's hand because she placed it on the barricade.  The First Amendment claim fails without even reaching the qualified immunity analysis.

**B.     Second Cause of Action: Fourth Amendment Unreasonable Seizure**

Plaintiff's second cause of action alleges that Officer Tinney used unconstitutional force when he hit her fingers with the baton and injured her finger.  Officer Tinney moves for summary judgment on the ground that no reasonable trier of fact could find that he violated Plaintiff's constitutional rights or that, at a minimum, he is entitled to qualified immunity as a matter of law.

1.   Whether Officer Tinney's Conduct Violated a Constitutional Right

When considering "whether an individual has been subjected to excessive force under the Fourth Amendment," the Ninth Circuit applies the reasonableness standard articulated in Graham v. Connor, 490 U.S. 386, 395 (1989).  Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir. 2010).  The reasonableness of the force is analyzed by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id.   The assessment "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.  The analysis involves three steps.

> First, [courts] assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted.  Second, [courts] assess the importance of the government interests at stake . . . .  Third, [courts] balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable.

Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003).

As to the first step in the analysis, "[a] police officer's use of baton blows . . . presents a significant use of force that is capable of causing pain and bodily injury, and therefore, baton blows . . . are considered a form of 'intermediate force.'" Young v. County of Los Angeles, 655 F.3d 1156, 1162 (9th Cir. 2011).  Indeed, the UCPD treats the use of baton force by its officers seriously, requiring that an officer immediately notify a supervisor as soon as an officer uses a baton on a person. (Dkt. No. 44-8 at 6-7, 15, 20.)  Here, the evidence is that

United States District Court
Northern District of California

9

Officer Tinney intentionally hit Plaintiff's hand with the baton by raising it over his left shoulder and then performing a backhand hit with enough force to injure her finger to the extent she required multiple surgeries.

At the second step, courts evaluate the importance of the government interests at stake by considering: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Miller, 340 F.3d at 964. However, as "the facts and circumstances of every excessive force case will vary widely," the courts' ultimate inquiry is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." Young, 655 F.3d at 1163 (internal quotation marks and citation omitted).

Viewing the totality of the circumstances in Plaintiff's favor, all of these factors weigh in favor of finding that the force used here was unreasonable. Plaintiff's alleged crime was minor—a possible misdemeanor for disobeying Officer Tinney's order to keep her hand off of the barricade. See Cal. Penal Code 148 (defining the crime as the willful resistance, delay or obstruction of a public officer discharging his official duties). A trier of fact could also find that at the time the force was used Plaintiff did not pose a threat. Officer Tinney's unambiguous testimony is that when he hit Plaintiff she posed a threat because she was once again "violently shaking" the barricade, and he was concerned other protesters would join in and the barricade would fall. By contrast, Plaintiff's testimony is that several minutes after she removed her hand from the barricade, she again placed her hand on the barricade for "support" and that she was not shaking the barricade when she was struck. In other words, she did not pose any threat to Officer Tinney, herself, or the other protesters.

Defendants argue that even if there was not an imminent risk of Plaintiff toppling the barricade because she was not shaking it, the issue is "whether hundreds of people pressed behind her would be incited to even further aggression by plaintiff's continued defiance of commands to keep her hand off the barricade in front of her." (Dkt. No. 53 at 8.) The Court is unpersuaded. Because Officer Tinney asserts that Plaintiff was shaking the barricade, he does not posit this theory of danger. Assuming he did, however, the present record does not

United States District Court
Northern District of California

indisputably support such a concern as Defendants do not point to anything that suggests that the "hundreds of protestors" behind the barricade and Plaintiff were aware of Officer Tinney's orders and were able to observe Plaintiff place her hand on the barricade for support several minutes after having removed her hand. [2] "[A] simple statement by an officer that he fears for his safety or the safety of others is not enough . . . [T]here must be objective factors to justify such a concern." Deorle v. Rutherford, 272 F.3d 1272, 1281 (9th Cir. 2001).

With respect to the third step in the analysis, the evidence supports a finding that Officer Tinney did not need to use the force inflicted in order to maintain the barricade and public safety. Again, Officer Tinney testified that he needed to hit Plaintiff with the baton because she resumed "violently shaking" the barricade, and she had demonstrated that she would not respond to verbal orders. For purposes of Defendants' motion, however, she was not shaking the barricade.

Defendants contend further that by merely returning her hand to the barricade Plaintiff was disobeying Officer Tinney's order, and the only way he could maintain the barricade was to ensure that she followed his orders and kept her hands off the barricade. Assuming such a need to maintain order, however, the evidence supports a finding that Officer Tinney did not need to forcefully hit Plaintiff with the baton in order to maintain the barricade. When Plaintiff was admittedly shaking the barricade and Officer Tinney verbally ordered her to remove her hand and struck the barricade with the baton, she removed her hand. Then several minutes passed, and she placed her hand back on the barricade, but did not shake the barricade. Since at the time she was struck, a jury could find that Plaintiff was not posing an immediate threat of toppling the barricade, a jury could find that Officer Tinney could have

---

[2] Defendants object to Plaintiff's argument that the barricades were tied together and therefore could not fall over. The Court assumes that even if tied together the barricades could fall over if violently shaken. To the extent Defendants are arguing that merely placing a hand on the barricade created a danger because the barricades were *not* tied together, such argument fails because a reasonable trier of fact could find the barricades were tied together to reduce the likelihood they could be toppled. Chief Celaya testified that it was the UCPD's practice to tie and lock the barricades together to, among other things, make them more difficult to overturn. (Dkt. No. 52-2 at 1-4.)

United States District Court
Northern District of California

again verbally ordered Plaintiff not to place her hand on the barricade or once again hit the barricade near—but not on—Plaintiff's hand. This finding is especially possible given that the evidence supports a finding that several minutes elapsed between when Plaintiff removed her hand and then placed it back on the barricade. None of the alternatives available to Officer Tinney would have injured Plaintiff, and a trier of fact could find both that Plaintiff did not pose a danger to herself, the officers, or others and that, under such circumstances, these alternative approaches were appropriate. Officer Tinney instead raised his arm above his left shoulder at a 45-degree angle and hit Plaintiff's fingers with the baton so hard that the resulting injury to her pinky finger required multiple surgeries.

Defendants' reliance on Jackson v. City of Bremerton, 268 F.3d 646 (9th Cir. 2001) is unavailing. There the officers attempted to arrest the plaintiff's son on a felony warrant at a family barbecue. The plaintiff directly and actively interfered with the officers' attempt to maintain order when she swore at and "advanced upon" the officers and "ran to interfere" with an officer who was in a physical altercation with another family member. Id. at 649-50. The Jackson plaintiff thus posed an immediate threat to the officers. There is no evidence here that Plaintiff in any way advanced upon Officer Tinney or engaged in any similar conduct.

Defendants' argument, at bottom, is that Plaintiff's "conduct posed an immediate threat to the officer's safety and to the safety of others." (Dkt. No. 53 at 9.) A reasonable trier of fact could find that by placing her hand on the barricade for support, Plaintiff did not pose an immediate threat to the safety of anyone that justified the response of a baton blow. The Court thus cannot conclude that every trier of fact would have to find that Officer Tinney's use of force was reasonable in the circumstances of this case.

### 2. Whether the Violated Right Was Clearly Established

Having determined that a reasonable trier of fact could find that Officer Tinney's use of force was unconstitutional, the Court must still decide whether the constitutional right at issue was "clearly established." Saucier, 533 U.S. at 201. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand

that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law, the unlawfulness must be apparent.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Espinosa, 598 F.3d at 543 (quoting Saucier, 533 U.S. at 202).

As explained above, a reasonable trier of fact could find that Plaintiff did not pose any danger by merely placing her hand on the barricade after removing it, as ordered, several minutes earlier. "[T]he right of non-dangerous subjects to be free from injuring force has long been clear." Nelson v. City of Davis, 709 F.Supp.2d 978, 989 (E.D. Cal. 2010); see also Deorle v. Rutherford, 272 F.3d 1272, 1285 (9th Cir. 2001) (stating that "every police officer should know it is objectively unreasonable" to use even a nonlethal beanbag round against an unarmed individual who presents no reasonable safety threat); Headwaters Forest Defense v. County of Humboldt, 276 F.3d 1125, 1131 (9th Cir. 2002) (finding it should have been clear to a reasonable officer that it was excessive to use pepper spray against nonviolent protestors).

Defendants' reliance on Meggs v. City of Berkeley, 2005 WL 483445 (N.D. Cal. 2005) is likewise unpersuasive. There, officers established a skirmish line around torches and an effigy lit by protesters in the middle of a street. After officers arrived at the scene, most of the protesters dispersed. Plaintiff Meggs, however, ran away and lit another fire on a nearby street corner. The officers subsequently used their batons to establish and hold a skirmish line around one of the original fires. Meggs became "visibly upset" when he observed officers disposing of a couch he had brought to the protest and began screaming. He then approached the skirmish line three separate times. Each time he was pushed back by officers using their batons, and the third time an officer also struck him in the leg with the baton, resulting in bruising. Id. at *1-2. The district court held the officers were entitled to qualified immunity as a matter of law because there was "overwhelming evidence that Meggs repeatedly threatened to break the officers' line, and that several times he attempted to do so." Id. at *6.

United States District Court
Northern District of California

1   Further, Meggs had not shown that he "had a clearly established constitutional right to be free

2   from the baton pushes and one strike administered to prevent him from breaking the police

3   skirmish line." Id. at *7.

4          Here, by contrast, a reasonable trier of fact could find that Plaintiff—unlike Meggs—

5   did not pose any danger to the officers or others at the time she was struck. Defendants do not

6   argue that she was trying to get past the barricade, and a jury could certainly find that she was

7   not. And, while she might have posed a threat when she was shaking the barricade, for

8   purposes of Defendants' motion she was not shaking the barricade—and had not shaken the

9   barricade for several minutes—at the time Officer Tinney ran over and struck her with the

10  baton.

11         That Plaintiff returned her hand to the barricade several minutes after having been

12  ordered to remove it does not mean Officer Tinney is entitled to qualified immunity. The

13  plaintiffs in Headwater Forest Defense were trespassing and had defied the officers' orders to

14  remove devices they wore which linked all the protesters together, yet the Ninth Circuit still

15  held it was improper for the officers to use pepper spray. 276 F.3d at 1128, 1130. Similarly,

16  in Young the court held that the officer's use of pepper spray and baton blows "in response to

17  Young's failure to obey an order would be 'plainly in excess of the force necessary under the

18  circumstances.'" 655 F.3d at 1167. The pivotal question is whether a reasonable officer

19  could conclude that Plaintiff posed a threat necessitating the force used. A reasonable trier of

20  fact could find she posed no such threat.

21         Similarly, that Officer Tinney testified that other demonstrators in a different area of

22  the protest were struggling with officers does not mean that *Plaintiff* posed a threat

23  necessitating the use of intermediate force. While that is certainly a factor the trier of fact

24  could consider, a trier of fact could still find that she did not pose any threat by merely resting

25  her hand on the barricade if all inferences are drawn in Plaintiff's favor. That Officer Tinney

26  warned Plaintiff not to place her hand on the barricade and through his actions, if not his

27  words, indicated that he would hit her with the baton if she disobeyed, also does not mean his

28  use of force was reasonable as a matter of law. Again, it is a factor for the trier of fact to

14

consider, but the Court is not aware of any case that holds that unreasonable force is made reasonable as a matter of law just because the officer warns that he will use it.

Defendants' assertion that qualified immunity must be granted because no case holds that it is improper to hit a protestor with a baton in the circumstances presented here is wrong. Courts "are not prevented from denying qualified immunity merely because no prior case prohibits the use of the precise force at issue in this case." Headwaters Forest Defense, 276 F.3d at 1131; see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (stating that "officials can still be on notice that their conduct violates established law even in novel circumstances").

Here, Officer Tinney concluded that his use of force was reasonable under his recitation of the facts; namely, his testimony that when he hit Plaintiff she was violently shaking the barricade. Plaintiff's conflicting testimony, however, creates a dispute about the material facts surrounding the circumstances of Officer Tinney's use of force. Viewing the record in the light most favorable to Plaintiff, Officer Tinney's use of force was not objectively reasonable because Plaintiff was peacefully protesting and did not pose any threat. Accordingly, summary judgment is not warranted on Officer Tinney's claim of qualified immunity.

**C.     Third, Fourth, and Sixth Causes of Action: Celaya and Bennett's Failure to Supervise and Adequately Discipline Officer Tinney**

Plaintiff's third, fourth, and sixth causes of action contend that Chief Celaya and Captain Bennett failed to adequately supervise and discipline—and, under state law, negligently supervised—Officer Tinney, thereby proximately causing Plaintiff's injury. Both sides agree that Celaya and Bennett were not at the scene of Plaintiff's injury and did not issue direct orders to Officer Tinney to strike Plaintiff with a baton. Though Plaintiff states that there is nonetheless "evidence in the record to support [her] claim[s]," Plaintiff only cites Officer Tinney's admission that he did not have training on how to respond to protestors shaking or otherwise touching police barricades. (Dkt. No. 49 at 7.) During the November 17, 2011 hearing, Plaintiff conceded that the First Amended Complaint does not include a lack of training claim and that she could have sought to amend her complaint to include such a claim but did not.

In addition, Plaintiff's third and fourth causes of action under §1983 require that the defendant performs "an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vicarious liability does not apply to § 1983 suits, so "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).  Plaintiff fails to offer evidence sufficient to support any such claim as to either Celaya or Bennett and instead focuses on the non-existent failure to train claim.  Since Plaintiff does not submit facts to support her third, fourth, or sixth causes of action, Defendants' motion for summary judgment as to the claims against Celaya and Bennett is granted.

### D.  Fifth Cause of Action: Tort of Battery

Plaintiff's fifth cause of action is a state law claim of battery against Officer Tinney. Battery, as defined by the California Penal Code, is "any willful and unlawful use of force or violence upon the person of another." Cal.Penal Code § 242.  A battery has the following elements: "(1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) the plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff." Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007).  A police officer commits battery only if the officer employed unreasonable force. Munoz v. City of Union City, 120 Cal.App.4th 1077 (2004).

Here, Plaintiff alleges that Officer Tinney struck her hand with his baton without her consent, causing injury. Defendants counter that "Officer Tinney's force was objectively reasonable under the circumstances," and Plaintiff cannot prevail on this claim without proving unreasonable force. (Dkt. No. 44 at 20.)  This claim, just as the Fourth Amendment claim, hinges on whether Officer Tinney's use of force was reasonable.  As previously outlined, a genuine dispute about material facts exists on this point.  Defendants' motion for summary judgment as to this claim is therefore denied.

United States District Court
Northern District of California

### ADDITIONAL DISCOVERY

Two discovery disputes remain unresolved. Defendants seek to require Plaintiff to submit to an independent medical exam ("IME") of Plaintiff's hand by a physician of Defendants' choosing. Defendants concede that they did not formally or even informally request such an IME before the discovery cut-off. Instead, as Defendants explained at oral argument, before the discovery cut-off Plaintiff and Defendants discussed having an IME performed on Plaintiff's hand by Plaintiff's treating physician; however, Defendants chose not to so proceed. Since Defendants did not seek the IME of Plaintiff's hand by a physician other than her treating physician before the discovery cut-off, the Court will not compel the IME sought by Defendants.

On the other hand, Plaintiff sought the depositions of Officer Jewell and Corporal Williams in July 2011, before the end of fact discovery, and Defendants agreed to produce them. Accordingly, Plaintiff's request to compel the depositions of Officer Jewell and Corporal Williams is granted provided their depositions are relevant to the claims remaining in this action; namely, the excessive force claims against Officer Tinney. The depositions shall occur before January 13, 2012.

### CONCLUSION

Genuine issues of material fact exist as to whether Officer Tinney's use of force was reasonable or excessive under the circumstances. Given the disputed material facts, and the importance of witness credibility to the resolution of this dispute, summary judgment is DENIED as to the second and fifth causes of action against Officer Tinney. Since Plaintiff did not present evidence sufficient to support her claims that Officer Tinney violated her rights to free speech or assembly or that Celaya and Bennett failed to adequately supervise and discipline—or negligently supervised—Officer Tinney, summary judgment is GRANTED as to Plaintiff's first, third, fourth, and sixth causes of action.

**IT IS SO ORDERED.**

Dated: December 19, 2011

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

17