IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHIVKA VALIAVICHARSKA,<br><br>Plaintiff,<br><br>v.<br><br>MITCH CELAYA, et al.,<br><br>Defendant. | Case No.: CV 10-4847 JSC<br><br>**ORDER RE: PRETRIAL CONFERENCE AND MOTIONS IN LIMINE** |

The Court held a pretrial conference in this case on January 19, 2012 and ruled as is set forth below.

## MOTIONS IN LIMINE

**A. Plaintiff's Motions in Limine**

1. Plaintiff's first motion in limine moves to exclude inquiry into Plaintiff's political views. This motion is uncontested by Defendant and **GRANTED**.

2. Plaintiff's second, third, and fourth motions in limine involve testimony by Defendant's police practices expert witness, which is addressed separately below.

3. Plaintiff's fifth and final motion in limine moves to exclude evidence that other police officers were attacked or injured by protestors on the day in question. Only evidence regarding what Officer Tinney saw or knew at the time of the incident is

relevant to determining the reasonableness of his actions. To the extent Defendant seeks to introduce evidence of violence toward the police outside the scope of Tinney's knowledge at the time of the incident in question, Plaintiff's motion is **GRANTED**.

**B. Defendant's Motions in Limine**

1. Defendant's first motion in limine has two parts:
   a. First, Defendant moves to preclude evidence, testimony or argument regarding the multiple investigations conducted, and reports issued, by the University of California and other entities about the incident in question. All investigation subsequent to the incident, as well as any disciplinary action that was or was not taken, is irrelevant to the remaining cause of action in this case and therefore inadmissible. This motion is **GRANTED** with the caveat that Plaintiff may briefly recite that she made a complaint about Officer Tinney, but no other details may be offered.
   b. Second, Defendant moves to exclude any reference to an unrelated 2009 complaint filed against Officer Tinney. This motion is **GRANTED**.
2. Defendant's second motion in limine involves testimony by Plaintiff's police practices expert witness and is addressed in a separate section below.
3. Defendant's third motion in limine has three parts:
   a. First, Defendant moves to preclude reference to a police baton as a "club" and to the officers' clothing as "riot gear." The distinction between a baton and club is one of nomenclature; a witness unfamiliar with police equipment may not appreciate the distinction, and the Court will not prohibit Plaintiff from referring to a "club." "Riot gear" is a more specialized term, and the parties will have the opportunity to question police officer witnesses about their gear on the day in question. If the evidence, however, does not support an inference that the police donned "riot gear"—and the record before the Court to date suggests it will not— Plaintiff may not refer to what the police wore as "riot gear." Defendant further

     requests that Plaintiff be prohibited from referring to the incident as an "atrocity" or the police response as "excessive." Counsel shall refrain from argument until closing argument and, even then, will be bound by facts in evidence and legally proper argument that stems from such evidence.

  b. Second, Defendant moves to preclude any reference, except during voir dire, to any other incidents of police brutality and police clashes with protestors, such as the November 18, 2011 incident at UC Davis or the broader Occupy protests occurring around the nation. This motion is **GRANTED**.

  c. Third, Defendant moves to preclude reference to Defendant's indemnification in the event of a guilty verdict. Plaintiff agrees that such reference would be improper, and this motion is therefore not disputed and is **GRANTED**.

4. Defendant's fourth and final motion in limine has two parts:

  a. First, Defendant moves to preclude reference to the medical report of Warren Strudwick, who was not disclosed as an expert witness pursuant to Federal Rule of Civil Procedure 26. Defendant's motion is **GRANTED**. Plaintiff states that she does not intend to offer the report, but that her disclosed expert medical witness has reviewed and perhaps relied upon this report. As noted below, expert witnesses may rely on otherwise inadmissible hearsay to form their opinions but may not convey the underlying hearsay to the jury. In a related issue, Defendant orally informed the Court that Plaintiff now seeks to admit new medical evidence from examinations conducted on Plaintiff after the close of discovery. Evidence of, or reference to, any medical evidence not disclosed before the end of discovery will not be permitted.

  b. Second, Defendant moves for an offer of proof by Plaintiff as to the actual amount paid by her insurance provider pursuant to Howell v. Hamilton Meats & Provisions, 52 Cal. 4th 541 (Cal. 2011). At the pretrial conference, Plaintiff dismissed the state-law battery claim in this action, and only the federal claim remains. Defendant requested the opportunity to submit a letter brief on this

3

issue, which shall be filed by January 24, 2012. Plaintiff shall submit any response by January 27, 2012.

## EXPERT WITNESS TESTIMONY

Both sides intend to call police practices expert witnesses. Each side has moved to exclude certain of the opposing party's police expert's proposed testimony. In response to the parties' motions in limine, the Court provides some guidance on the proper scope of expert testimony given the particular facts of this case.

In instances where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." U.S. v. Garcia, 7 F.3d 885, 889 (9th Cir. 1993). Courts have a "basic gatekeeping obligation" to ensure that all expert testimony "is not only relevant, but reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (internal quotation marks omitted). Expert testimony is only admissible to the extent it "address[es] an issue beyond the common knowledge of the average layman." Mukhtar v. California State University, Hayward, 299 F.3d 1053, 1065 n.9 (9th Cir. 2002) (quoting United States v. Vallejo, 237 F.3d 1008, 1019 (9th Cir.), amended by 246 F.3d 1150 (9th Cir. 2001)). Expert opinion is therefore improper when it ventures into issues "the jury is well equipped to determine intelligently and to the best possible degree . . . without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc., 618 F.3d 1025, 1040-41 (9th Cir. 2010) (internal quotations and citation omitted).

An expert may not provide "impermissible legal conclusions or make credibility determinations reserved for the trier of fact." Engman v. City of Ontario, 2011 WL 2463178 at *8 (C.D. Cal. June 20, 2011). To the extent the evidence is otherwise admissible, "expert testimony concerning an ultimate issue is not per se improper," but "an expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue of law." Mukhtar v. California State University, Hayward, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002)

(citing United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994) that if "an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's") (emphasis in original); see also Anderson v. Suiters, 499 F.3d 1228, 1273 (10th Cir. 2007) (clarifying that "while expert witnesses may testify as to the ultimate matter at issue . . . this refers to testimony on ultimate facts; testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored"); PixArt Imaging, Inc. v Avagao Tech. Gen. IP, 2011 WL 5417090 at *6 (N.D. Cal. Oct. 27, 2011) (noting that "expert testimony consisting of legal conclusions is generally inappropriate").

Examination of expert witness cannot be used as a backdoor means to present otherwise inadmissible hearsay evidence to the jury. See e.g., U.S. v. Velasquez, 2011 WL 5573243 at *3 (N.D. Cal. Nov. 14, 2011) (noting an expert can base opinions "on hearsay if an expert in her field would reasonably rely upon such hearsay" to form an opinion, but the expert cannot "transmit that hearsay to the jury"); see also U.S. v. Santini, 656 F.3d 1075, 1078 (9th Cir. 2011) (quoting Federal Rule of Evidence 703, which states that "facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect").

It is also inappropriate for an expert to attempt to intuit a party's subjective knowledge or "create a question of fact as to what [the party] actually knew." Cotton ex. Rel. McCLure v. City of Eureka, 2011 WL 4047490 at *2 (N.D. Cal. Sep. 8, 2011) (quoting Gobert v. Caldwell, 463 F.3d 339, 348 n.29 (5th Cir. 2006)). This prohibition extends to "legal conclusions or speculative factual conclusions based on [the party's] purported subjective knowledge, including, without limitation, that: [the party's] conduct was intentional, reckless and dangerous" because "these determinations are the province of the trier of fact, based on its assessments of the evidence and testimony presented." Id. (internal quotations omitted).

Proper expert testimony can, however, discuss "policies and professional standards of practice," though this evidence is "only probative of what inferences [the party] *could have*

1  made; whether [the party] *should have* made the connection is irrelevant to this analysis." Id.
2  at *3 (quoting Watson v. Torruella, 2009 WL 324805 at *6 (E.D. Cal. Oct. 7, 2009)); see also
3  Hernandez v. City of Napa, 2010 WL 4010030 at *6 (N.D. Cal. Oct. 13, 2010) (stating that
4  expert testimony cannot contain speculative conclusions). In order "to avoid invading the
5  province of the jury," the application of such expert opinion to the particular facts of an
6  excessive force case is best done through hypothetical questions. Engman v. City of Ontario,
7  2011 WL 2463178 at *7 (C.D. Cal. June 20, 2011).

8       In excessive force cases, an expert may not opine on whether the "Defendants' use of
9  force was reasonable under the circumstances" as this "is just such an opinion on an ultimate
10 issue of law that risks usurping the jury's province." Martinez v. Davis, 2011 WL 486255 at
11 *3 (C.D. Cal. Feb. 4, 2011); see also Jimenez v. Sambrano, 2009 WL 2382622 at *2 (S.D.
12 Cal. July 31, 2009) (noting that "whether Defendants' use of force was unreasonable or
13 excessive is an ultimate issue of law in this case" and therefore the expert's "opinions in this
14 regard are inadmissible").

15      The parties shall follow these guidelines in directing the testimony of their police
16 practices experts. These experts shall not testify as to whether Officer Tinney's use of force
17 in the circumstances of this case was reasonable. Nor shall they testify as to Officer Tinney's
18 subjective intent. They may testify as to what, if any, alternatives were available to Officer
19 Tinney's use of force *assuming* a certain set of facts, but they may not testify that the facts
20 must be found in a particular way. See Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir.
21 2005) (en banc) (holding that expert witnesses in excessive force cases can comment on
22 "alternative methods" available to police officers); Engman, 2011 WL 2463178 at *9 (stating
23 that an expert witness may "opine as to whether the officers could have used a lesser degree of
24 force"); Azevedo v. City of Fresno, 2011 WL 284637 at *9 (E.D. Cal. Jan. 25, 2011)
25 (admitting expert testimony regarding alternate police techniques, other than use of a taser,
26 available to the officer in question).

27      Further, as the only remaining cause of action in this case is against one police officer
28 in his individual capacity, expert opinion on issues relating to lack of training, supervision and

discipline will not be permitted. See, e.g., Lopez v. Chula Vista Police Dept., 2010 WL 685014 at *4 (S.D. Cal. Feb. 18, 2010) (excluding expert testimony on the training, supervision, and discipline when those claims were dismissed by summary judgment); Engman, 2011 WL 2463178 at *8 (finding in an excessive force case that an expert's "opinions regarding the City's internal affairs investigation into the incident are irrelevant because the Court granted summary judgment in favor of defendant on plaintiffs' municipal liability claim").

In this case, Defendant filed a copy of the report authored by Plaintiff's police practices expert, Roger Clark, with his motion in limine, which the Court reviews in part below. As Plaintiff did not attach a copy of Defendant's police practices expert witness report, the Court cannot rule specifically on any of its contents. Defendant is, of course, nonetheless bound by the guidelines set forth above.

The Court is not providing an exhaustive review of Roger Clark's report, and Plaintiff should evaluate any proposed testimony against the legal parameters provided above with the following guidance:

1. Plaintiff may ask Roger Clark questions based on assumed facts, but Mr. Clark may not provide any factual testimony about what he believes happened during the incident. This applies to his proposed testimony on nearly every page of the report. For example, see "Uncontested Facts" on pages 4-5 and "Overview of Events and Commentary" on pages 5-8.

2. Roger Clark may not offer any legal opinions or legal instruction and will not instruct the jury on any aspect of the Penal Code, the Constitution, or the elements of the charge faced by Defendant. This applies to his proposed testimony on page 4 (paragraphs 3, 5, and 8), page 5 (paragraphs 8 and 13), page 7 (regarding constitutional rights), page 8 (paragraph 2), page 10 (paragraph 9), page 11 (paragraph 13), page 12 (Learning Domain #2: "Criminal Justice System"); page 13 (defining "a reasonable officer," "unreasonable force," and "malicious assaults"), and page 15 (stating that possession of a baton by a civilian is a felony, referring to

the baton as a deadly weapon under the Penal Code, and defining "illegal use" by an officer).

3. Roger Clark shall not characterize the baton as a "deadly weapon." See, for example, page 4 (paragraph 8) and page 10 (paragraph 7). In addition, Roger Clark shall not use the term "deadly force" with regard to this incident.

4. Roger Clark may not testify as to the contents of otherwise inadmissible evidence nor disclose sources he reviewed that are not pertinent to the opinions he is qualified to offer. In addition, Roger Clark shall not indicate his agreement or disagreement with any independent findings that are not coming into evidence, such as those of the Police Review Board. See, for example, page 8 (paragraph 1).

5. The causes of action relating to the police in general have been dismissed; Roger Clark will therefore limit his testimony to issues pertinent to Officer Tinney's conduct and will not opine about the larger police response. See, for example, page 5 (paragraph 12 and 13), page 8 (paragraph 1), page 9 (paragraph 3), and page 11 (paragraphs 10, 11, and 14).

6. The Court again cautions both parties that neither expert will offer an opinion on whether Officer Tinney's use of force was reasonable. See, for example, page 9 (paragraph 4).

7. Roger Clark may not speculate about what anyone thought or the reasons behind their actions, particularly in the cases of Officer Tinney and Plaintiff, both of whom will be on the witness stand and able to testify as to their motivations. See, for example, page 9 (paragraph 5) and page 10 (paragraph 6).

8. Roger Clark may not invade the province of the jury and offer testimony on issues the jury is best equipped to determine. See, for example, page 10 (paragraph 8) and page 11 (paragraph 12)

9. Roger Clark may not reference investigations that occurred into this incident or any consequences faced by Officer Tinney. See, for example, page 8 (paragraph 1) and page 11 (paragraph 14).

**EXHIBIT OBJECTIONS**

Plaintiff and Defendant agreed to meet and confer on Monday, January 23, 2012 regarding their respective photograph and video exhibits. Remaining objections are addressed below.

**A. Plaintiff's Objections**

Plaintiff objects to the following exhibits offered by Defendant:

1. Timeline: Defendant clarified that he does not intend to offer this chart in evidence, but only as a demonstrative. As Plaintiff's counsel conceded he had not even reviewed the demonstrative when he made his written objection, or even by the time of the pretrial hearing, Plaintiff's objection is overruled.
2. CAD Operations Report: **GRANTED** to the extent Defendant attempts to introduce a paper copy of this report, which Officer Tinney would not have seen at the time of the incident, but **DENIED** as to audio heard by Officer Tinney prior to the incident and which he can properly authenticate.
3. Arrest reports: **GRANTED.**
4. How to Strike this Week: **GRANTED**. The Court's ruling still allows this document to be used for impeachment purposes.
5. Multiple barricades: **GRANTED**. The Court will permit Defendant to offer one barricade as an exhibit. Defendant may make an offer of proof on the need to use multiple barricades—and the appropriateness of the proposed demonstration—at a later time.

**B. Defendant's Objections**

Defendant objects to the following exhibits offered by Plaintiff:

1. Medical report by Dr. Strudwick: **GRANTED.**
2. Officer Tinney's recorded statement to Internal Affairs: **GRANTED.** The Court's ruling still allows this statement to be used for impeachment purposes.
3. Letter from Captain Bennett: **GRANTED.**

9

4. Complaint Investigation Report of Findings Citizen Complaint filed by Plaintiff: **GRANTED.**
5. UCPD Complaint Investigation Report filed by Brian Ouyang: **GRANTED.**
6. UCPD Operations Report: **GRANTED.**
7. Police Review Board Report: **GRANTED.**

## WITNESSES

Specific witness objections are addressed below. The Court notes that the remaining non-expert witnesses are limited to relevant testimony concerning personal observation of the actual incident between Officer Tinney and Plaintiff or personal knowledge directly related to what Officer Tinney knew or saw at the time of the disputed incident. Testimony regarding clashes between police and protestors not observed by Officer Tinney prior to the incident will not be permitted. Testimony about the protest in general will not include any events that happened after the incident between Officer Tinney and Plaintiff and will be limited in scope to provide only necessary and relevant background information.

**A. Plaintiff's Objections**

1. Plaintiff's objections to the testimony of Lt. Marc Couloude, Lt. Adan Tejada, Lt. Eric Tejada, and Sgt. Ben Hartnett are **GRANTED** as these officers did not observe the incident in question.
2. Plaintiff also objects to Teresa Wong and Barbara Fisher on the grounds that they were not properly identified pursuant to Federal Rule of Civil Procedure 26. Defendant contends that Barbara Fisher was noticed, but Plaintiff disputes that the identification was sufficient. The Court requires further argument on this issue as the Rule 26 disclosures were not before the Court. Defendant shall file a letter brief addressing why Ms. Wong and/or Ms. Fisher should be allowed to testify as proposed on or before January 24, 2012. Plaintiff shall file any response by January 27, 2012.

//
//

**B. Defendant's Objections**

1. Defendant's objection to Cindy Bello on the grounds that she was not properly noticed under Federal Rule of Civil Procedure 26 is **DENIED** as harmless error since Defendant deposed Ms. Bello.

2. Defendant's objection to Brian Ouyang is **GRANTED**.

## CONCLUSION

Jury trial will commence on February 6, 2012 at 8:30 a.m. in Courtroom F on the 15th Floor. Each party may exercise three peremptory challenges, and the Court will empanel a jury of eight, with no alternates. Monday through Wednesday, the Court will recess at 2:30 p.m., with a break around 10:00 a.m. and a 45 minute lunch break around noon. On Thursday, February 9, the Court will recess at 1:00 p.m.

Subject to the specifications enumerated in the Pretrial Order (Dkt. No. 32), the parties shall jointly submit voir dire questions, jury instructions, jury verdict form, a statement of the case, and any other updated materials by January 27, 2012.

Evidence as to punitive damages shall be bifurcated from the rest of the trial.

**IT IS SO ORDERED.**

Dated: January 24, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

11